# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL S. HALBERG and C.M.H., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| MCLEAN HOSPITAL, | ) ) |
| Defendant. | ) ) ) |

Civil Action No.
17-11341-FDS

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO REMAND AND DEFENDANT'S MOTION TO DISMISS

**SAYLOR, J.**

This an ERISA-related action arising from the treatment of a minor child at McLean Hospital, a psychiatric hospital located in Belmont, Massachusetts. C.M.H. was treated in defendant McLean's 3East treatment program for approximately 18 months. Plaintiffs C.M.H. and her father, Samuel Halberg, allege that McLean misrepresented to them that the treatment was "medically necessary" and that it was not covered by plaintiffs' health insurance company, United Behavioral Health. Accordingly, they paid more than $400,000 out-of-pocket for treatment, an amount they contend was inflated.

Plaintiffs filed suit in state court to recover their expenses, raising several state-law claims. McLean removed the action to this Court on the basis of ERISA preemption. Plaintiffs have moved to remand the action to state court, and McLean has moved to dismiss the complaint for failure to state a claim. For the following reasons, the Court finds that it lacks subject-matter jurisdiction, and plaintiffs' motion to remand will be granted.

**I.     Background**

   **A.     Factual Background**

The facts are set forth as described in the complaint.

C.M.H. is a resident of Brooklyn, New York, and suffers from significant mental-health issues. (Compl. ¶¶ 8, 19). Samuel Halberg is her father. (*Id.* ¶ 7).

At all relevant times, C.M.H. was a minor child insured by United Behavioral Health. (*Id.* ¶ 8). The insurance coverage was provided as an employee benefit through her mother's employer, AXA Equitable Insurance Company. (*Id.*). The employee-benefit plan includes coverage for mental-health treatment that is "medically necessary." (*Id.* ¶¶ 18, 26).

McLean Hospital operates residential mental and behavioral health facilities in Belmont, Massachusetts. (*Id.* ¶ 13). It is an in-network provider under the employee-benefit plan with United. (*Id.* ¶ 14). McLean and United have entered into a contract called a network participation agreement. (*Id.* ¶¶ 14-15). Among other provisions, that contract prohibits McLean from directly billing United patients for services unless United has first declined coverage. (*Id.* ¶¶ 15-16).

On October 4, 2011, C.M.H. was admitted to McLean's 2East residential treatment program after attempting suicide. (*Id.* ¶ 19). She was treated at 2East for more than two months before McLean staff recommended that she be transferred to the 3East "intensive dialectical behavior therapy program." (*Id.*).

On December 27, 2011, Samuel Halberg met with Sara Hunt, a financial counselor at McLean. (*Id.* ¶ 20). According to the complaint, Hunt informed Halberg that the 3East program was not covered under McLean's contract with United and that he would be required to pay for the treatment out-of-pocket. (*Id.*). Hunt allegedly also told Halberg that he would have to sign a

2

"Notice of Non-Covered Services," which stated:

> I am authorizing McLean Hospital to bill me directly for services rendered during this admission. I understand that I am fully responsible and agree to pay all charges at the rates established. I understand that charges for these non-covered services will not be submitted to my health insurance plan by McLean Hospital.

(*Id.*). Hunt further told him that although McLean would not submit the charges to United, it would assist with any claims that Halberg independently submitted to United. (*Id.* ¶ 21). Hunt also allegedly told him that United "may eventually provide reimbursement for the services C.M.H. would be receiving." (*Id.*).

According to the complaint, based on these representations, Halberg signed the "Notice of Non-Covered Services." He also signed a separate document titled "McLean Hospital Registration Agreement," which included the following:

> I understand that I am financially responsible for all charges, co-payments and deductibles remaining after insurance payments, and for all hospital charges that are not covered by my insurance company or third party payer.

(*Id.* ¶¶ 22, 23).

C.M.H. subsequently was treated at 3East from December 27, 2011, through May 8, 2013, a period of approximately 18 months. (*Id.* ¶ 24; Not. of Rem. ¶ 5)

McLean did not request authorization from United prior to transferring C.M.H. to 3East. (Compl. ¶ 24). It began directly billing Halberg for the treatment. (*Id.*). Sometime in 2012, Halberg prepared and submitted insurance claims to United without assistance from McLean. (*Id.* ¶ 25). United approved "coverage for a small subset of plaintiffs' insurance claims," which it paid to McLean. (*Id.* ¶¶ 4, 32). However, McLean then remitted the money it received back to United. (*Id.* ¶ 32).

United deemed the bulk of C.M.H's treatment at 3East to be medically unnecessary. (*Id.* ¶ 26). Coverage denial letters from United stated as follows:

3

> Because your provider is contracted with [United], you cannot be billed fees beyond your copayment and/or deductible unless you sign a written explicit payment arrangement *following the receipt of this adverse determination* where you agree to pay for additional services.

(*Id.*) (emphasis in original).

The complaint alleges that the network participation agreement between McLean and United covered all mental-health and substance-abuse services provided by McLean. (*Id.* ¶ 27). It further alleges that McLean suspected that United would deny coverage for C.M.H.'s treatment at 3East and therefore induced Halberg to sign the "Notice of Non-Covered Services" and "McLean Hospital Registration Agreement." (*Id.*). Nevertheless, under the network participation agreement, McLean was obligated to seek United's authorization for any care provided to C.M.H. and could not directly bill plaintiffs for services until a denial-of-coverage letter had been issued. (*Id.* ¶ 30).

### B. Procedural Background

C.M.H. and her mother, Eve Halberg, originally filed a different complaint in this court against both United and McLean on February 12, 2016. *See Halberg v. United Healthcare Ins. Co.*, 16-cv-10246-DJC. There were two counts in that complaint. Count One alleged that United violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), for failing to provide complete coverage for C.M.H.'s treatment at 3East. Count Two alleged that McLean violated the Massachusetts consumer protection statute, Mass. Gen. Laws ch. 93A. That action was voluntarily dismissed without prejudice by plaintiffs pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

C.M.H. and Samuel Halberg then filed two new lawsuits.[1] The first was filed in the

---

[1] Samuel Halberg, C.M.H.'s father, is a named plaintiff in this suit. Eve Halberg, C.M.H.'s mother and the AXA employee through whom C.M.H. is covered, was a named plaintiff in the first suit.

Eastern District of New York on November 30, 2016, against United. *See Halberg v. United Behavioral Health*, 16-cv-06622-MKB. The two-count complaint reasserted the ERISA claim alleged in the earlier Massachusetts federal lawsuit and sought "full and fair review" of United's denial of coverage pursuant to 29 U.S.C. §§ 1132(a)(3), 1133(2). That action is still pending.

The second (which is this action) was filed in Massachusetts state court on June 29, 2017, against McLean. The complaint asserted five state-law claims against defendant: breach of contract (Count 1), unjust enrichment (Count 2), violation of Mass. Gen. Laws ch. 93A (Count 3), common law fraud (Count 4), and tortious interference with contract (Count 5). McLean timely removed the action to this court on July 20, 2017, alleging that all claims were preempted by ERISA.

Plaintiffs have since moved to remand this case to state court, contending that ERISA preemption does not apply and that this Court lacks subject-matter jurisdiction. McLean has also moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

## II. Legal Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." The burden of establishing federal jurisdiction is placed upon the party seeking removal. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

## III. Analysis

At the outset, it is important to understand the nature of the claims that plaintiffs are asserting. In essence, C.M.H. contends that she was a beneficiary of an employee-benefit plan that included coverage for medically necessary mental-health treatment. She obtained mental-

5

health treatment at McLean that she says was medically necessary and should have been covered by the plan. Instead, she alleges McLean misled her father and induced him to pay directly for the treatment by claiming that no coverage existed. Plaintiffs theorize that McLean's motive was to charge a higher price for the treatment.

Plaintiffs are not seeking the payment of benefits from the plan (at least not in this lawsuit). Instead, they are seeking damages from McLean to recover both the amount that the plan would have paid, had the claim been submitted in the normal course, and the additional amount McLean charged Halberg above what the plan would have paid (which plaintiffs contend is inflated). The lawsuit is premised, of course, on the contention that the treatment was covered by the plan; if it was not, plaintiffs have not suffered any injury.

The lawsuit asserts five different state-law theories of recovery, including claims arising under contract law, quasi-contract, tort law, and the Massachusetts consumer-protection statute. All are based on the same basic idea: that McLean wrongfully induced Halberg to pay directly for treatment that should have been paid by the plan. In very simple terms, the claims are for improper interference with the receipt of plan benefits.

Although all of plaintiffs' claims are brought under state law, McLean removed the case to federal court. It contends that this Court has federal-question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because plaintiffs' claims are completely preempted by ERISA, and are therefore in reality federal claims. "When [a] federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003); *see also Danca v. Private Health Care Systems, Inc.*, 185 F.3d 1, 4 (1st Cir. 1999) ("Where a claim, though couched in the language of state law, implicates an

6

area of federal law for which Congress intended a particularly powerful preemptive sweep, the cause is deemed federal no matter how pleaded.").

The central question, therefore, is whether plaintiffs' claims are completely preempted by ERISA. If they are not, there is no federal-question jurisdiction, and this case must be remanded to state court.

### A. ERISA Preemption Generally

ERISA was enacted to "protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). The statutory scheme "provide[s] a uniform regulatory regime over employee benefit plans. To [that] end, ERISA includes expansive preemption provisions." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). "ERISA will be found to preempt state-law claims if the trier of fact necessarily would be required to consult the ERISA plan to resolve the plaintiff's claims." *Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 281 (1st Cir. 2000).

There are two forms of ERISA preemption. The first is complete preemption under § 502(a)(1)(B). The Supreme Court has stated that "if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)). Complete preemption is an exception to the well-pleaded complaint rule. *Coon-Retelle v. Verizon New England Inc.*, 2017 WL 1234115, at *5 (D. Mass.

7

Mar. 10, 2017) (citing *Rogers v. Rogers & Partners, Architects, Inc.*, 2009 WL 5124652, at *5 (D. Mass. July 27, 2009)). The Court must therefore look to the substance of the claim, not its mere form, in making that determination.

The second form is conflict preemption under § 514(a). Under § 514, ERISA's provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Although conflict preemption is an affirmative defense, "raising a colorable ERISA § 514 preemption defense is no basis for federal jurisdiction." *Danca*, 185 F.3d at 4-5. A state law that does not refer to an ERISA plan is nevertheless preempted if it has a "connection with" an ERISA plan. *Cal. Division of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 325 (1997); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987) (stating that ERISA's broad preemption clause applies provided a state claim "relate[s] to" an ERISA plan).

### B. Whether Complete Preemption Applies

In *Davila*, the Supreme Court established a two-part test to determine whether complete preemption applies. First, the court must determine whether a plaintiff "could have brought his claim under ERISA § 502(a)(1)(B)." *Davila*, 520 U.S. at 210. Second, there must have been "no other independent legal duty that is implicated by [the] defendant's actions." *Id.* Here, plaintiffs' claims fail both parts of the *Davila* test.

#### 1. Whether Plaintiffs Could Have Brought a Claim under ERISA

Defendant contends that plaintiffs' state-law claims could have been brought under § 502. *See Negron-Fuentes v. UPS Supply Chain Solutions*, 532 F.3d 1, 7 (1st Cir. 2008) ("Removability [] turns on whether any of [plaintiffs'] claims . . . are in substance duplicated or supplanted by the ERISA [§ 502] cause of action . . . .")).

8

Section 502(a)(1)(B) provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits . . . to enforce his rights . . . or to clarify his rights to future benefits under the terms of the [ERISA] plan." 29 U.S.C. § 1132(a)(1)(B).

The first question is whether plaintiffs fall within the limited categories of persons authorized to sue under the statute: "participants" and "beneficiaries." C.M.H. is a beneficiary, and because she is a minor, her father can sue on her behalf. It is unclear to what extent Halberg is suing on behalf of C.M.H. (for benefits that the plan should have paid) and on behalf of himself (for the excess charged by McLean). However, the parties do not appear to dispute that plaintiffs are authorized to bring a § 502 claim.[2]

The second question is whether McLean, as a health-care provider, is a proper defendant under § 502. The statute does not expressly limit the type of parties who can be sued. As a health-care provider that allegedly interfered with the receipt of plan benefits, McLean is "indisputably not a plan administrator, sponsor, or fiduciary," which are the typical defendants in ERISA suits. *Negron-Fuentes*, 532 F.3d at 10; *cf. Hogan v. Jacobson*, 823 F.3d 872, 880 (6th Cir. 2016) (stating that "the plan administrator" is "the proper defendant in an ERISA action concerning benefits"). Nothing in the statute's text, however, specifies that ERISA actions may only be brought those entities, although this Court is unaware of any cases where a viable § 502 claim was brought against a health-care provider. *Cf. Danca*, 185 F.3d at 2 (suit brought against both plan administrator and "utilization review firm" hired by the administrator). It is at least possible, therefore, that a health-care provider could be a proper defendant in an action under § 502.

The third question is whether plaintiffs are seeking to "recover benefits" or to "enforce"

---

[2] Halberg appears to be a beneficiary of the Plan, but is not suing as such.

or "clarify" their rights under an ERISA plan. Again, all of the claims allege, in substance, that McLean deliberately misled plaintiffs into paying for treatment that should have been covered under the plan in order to charge higher rates.

Certainly, plaintiffs are not seeking to "enforce" their rights under an ERISA plan—indeed, they have filed a separate suit against United in the Eastern District of New York to do just that. Whatever rights they have against McLean arise under the network provider agreement, common law, or Chapter 93A, the consumer-protection statute. Nor are they seeking to "clarify" those rights. Furthermore, this lawsuit does not appear to be a claim to "recover benefits." In part, it is a suit to recover damages for amounts paid above whatever benefits should have been paid. And, in part, it is a suit to recover damages for interference with the provision of benefits—in other words, not to recover the benefits themselves, but damages from a third party arising out the failure to receive benefits from a plan.

Accordingly, it appears that the claims in this suit cannot be "construed as colorable claims for benefits under § 502(a)(1)(B)." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 242 (2d Cir. 2014). The claims plaintiffs are asserting are not the types of claims specified in the statute, and therefore plaintiffs could not have asserted a § 502 claim against defendant.

### 2. Whether Independent State Legal Duties Are Implicated

Under *Davila*, no independent state legal duties exist where "interpretation of the terms of [an ERISA plan] forms an essential part" of the claim and "liability would exist [] only because of [defendant's] administration of ERISA-regulated plan benefits." *Davila*, 542 U.S. at 213. However, here the suit "neither interferes with the relationships among core ERISA entities nor tends to control or supersede their functions." *Stevenson v. Bank of New York Co., Inc.*, 609 F.3d 56, 61 (2d Cir. 2010).

In this district, the case with the closest fact pattern is *Giannetti v. Mahoney*, 218 F. Supp. 2d 8 (D. Mass. 2002). In *Giannetti*, the plaintiff brought suit against an insurance agent for misrepresentations made in procuring an ERISA policy. *Id.* at 14-15. The court nevertheless rejected defendant's argument that the claim was an "alternative enforcement mechanism" to ERISA § 502, noting "what plaintiffs really challenge in this action is not *the plan* itself . . . but *the procurement of the plan* by an insurance agent and his agency." *Id.* at 12 (emphasis in original). Similarly, plaintiffs' claims here can be distilled to a claim for improper interference with the operation of a plan, as the complaint alleges that McLean falsely induced them to agree to pay directly for C.M.H.'s treatment. The claims do not allege that a plan administrator breached a fiduciary duty or plan provision; therefore, they implicate independent state legal duties. Under the circumstances, the suit "poses no danger of undermining the uniformity of the administration of benefits that is ERISA's key concern." *Stevenson*, 609 F.3d at 61 (citing *Davila*, 542 U.S. at 208).

In summary, the claims asserted by plaintiffs could not have been asserted under § 502, and complete ERISA preemption does not apply. Accordingly, there is no claim arising under federal law and no subject-matter jurisdiction; remand of this matter to the state court is required.

### C. Proceedings in State Court

That conclusion is not necessarily a satisfactory resolution of this matter. The Court fully expects that when this case is remanded, defendant will assert a preemption defense under ERISA § 514, because disposition of plaintiffs' claims will likely require examination of the ERISA plan to determine the scope of coverage. *See, e.g.*, *Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44, 52-53 (1st Cir. 2000) (preempting breach of contract claim "where the damages must be calculated using the terms of an ERISA plan"); *Carlo v. Reed Rolled Thread Die Co.*, 49

F.3d 790, 794 (1st Cir. 1995) (preempting negligent misrepresentation claim concerning scope of ERISA plan benefits); *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir. 1994) (preempting misrepresentation claim). It is entirely likely, therefore, that these claims will eventually be dismissed.

But if one assumes that plaintiffs' version of events is correct—and at this stage, the Court must—that means that plaintiffs will have suffered a substantial injury, and McLean will have been unjustly enriched, yet the law will have provided no remedy. That may be a legally required outcome, but it is not necessarily a fair one.

It is possible, of course, that the state-court proceedings will be resolved differently. It is also possible that the lawsuit against United in New York will provide an opportunity for complete or partial relief (for example, by construing the plan's fiduciary obligations broadly enough to permit recovery by plaintiffs against the plan, leaving the plan to recover against McLean on the network provider contract). And, it is certainly possible that the Court is mistaken, and § 502 should be construed broadly enough to encompass this type of claim.

In any event, a rational statutory and doctrinal framework ought to permit such a claim to be considered on its merits. But under the existing framework, rational or not, this Court does not appear to have legal authority to resolve the dispute.

## IV. Conclusion

For the foregoing reasons, the Court concludes that it lacks subject-matter jurisdiction. Plaintiffs' motion to remand is therefore GRANTED, and the case is hereby REMANDED to the Superior Court. The Court does not reach defendant's motion to dismiss, which will remain pending after remand.

**So Ordered.**

                                                                        /s/ F. Dennis Saylor IV
                                                                         F. Dennis Saylor IV
Dated: May 14, 2018                            United States District Judge